UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In the Matter of the Application of

TRUMP VILLAGE SECTION 4, INC.

          Petitioner,

For a judgment to stay the arbitration commenced by

LOCAL 804 INTERNATIONAL BROTHERHOOD OF TEAMSTERS

          Respondents.

Civ. Action No.
_____

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>VERIFIED PETITION TO STAY ARBITRATION</u>**

      **BOND, SCHOENECK & KING, PLLC**

      Daniel F. Murphy, Jr., Esq.
      Mary Ellen Donnelly, Esq.
      Theresa Rusnak, Esq.
      600 Third Avenue, 22nd Floor
      New York, New York 10016
      (646) 253-2392

      *Attorneys for Petitioner*

14394359.2

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 1

ARGUMENT .............................................................................................................................. 3

    A.  The Arbitration Should Be Stayed in Favor of the NLRB Proceedings .............................. 4

    B.  Trump Village is Entitled to a Stay of Arbitration Until the Issue of Arbitrability Can be Decided ................................................................................................ 5

        i.  Trump Village Would Suffer Irreparable Harm if Forced to Arbitrate This Dispute ...... 6

        ii.  There is a Strong Likelihood that Trump Village Will Succeed on the Merits ............... 9

            a.  Conduct Arose After the Expiration of the CBA ........................................................ 9

            b.  The Right at Issue is Not Vested ................................................................................. 9

            c.  The Right to Arbitration Does Not Survive Under Normal Principles of Contract Interpretation................................................................................................ 10

        iii.  Alternatively, There are Serious Questions Going to the Merits and the Balance of the Hardships Tips in Favor of Trump Village ............................................ 11

CONCLUSION........................................................................................................................... 12

14394359.2

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*" New York Dialysis Servs., Inc. v. New York State Nurses Ass'n*,
  262 F. Supp. 3d 96 (S.D.N.Y. 2017) .................................................................................... 13

*Allied Maintenance Corp. v. Local No. 32B–32J, Serv. Employees Int'l Union*, 88 Lab. Cas.
  (CCH) (S.D.N.Y.1980) ........................................................................................................ 9

*American Bridge v. Local 40, Int'l Assoc. of Bridge Workers*,
  130 L.R.R.M. 3202 (S.D.N.Y.1988) .................................................................................... 9

*AT&T Technologies v. Communications Workers of America*,
  475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ...................................................... 10

*Carey v. General Electric Co.*,
  315 F.2d 499 (2d Cir.1963), cert. denied, 377 U.S. 908, 84 S.Ct. 1162, 12
  L.Ed.2d 179 (1964) .............................................................................................................. 8

*Colonie Hill, Ltd. v. Loc. 164, Bartenders, Hotel & Rest. Emp. Union*,
  343 F. Supp. 986 (E.D.N.Y. 1972) ...................................................................................... 8

*Fedway Assocs., Inc. v. Wine, Liquor & Distillery Workers Union Loc. 1-D, UFCW*,
  No. 21-CV-8536 (VEC), 2021 WL 7710199 (S.D.N.Y. Nov. 3, 2021) ............................. 10

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*,
  922 F. Supp. 2d 435 (S.D.N.Y. 2013), aff'd, 764 F.3d 210 (2d Cir. 2014) ......................... 15

*Gvozdenovic v. United Air Lines, Inc.*,
  933 F.2d 1100 (2d Cir. 1991) ............................................................................................ 11

*Int'l Brhd. of Boilermakers v. Combustion Engineering*,
  337 F. Supp. 1349 (E.D.N.Y. 1971) .................................................................................... 9

*Kentile, Inc. v. Local 457, United Rubber, Cork, Linoleum & Plastic Workers of America*,
  228 F.Supp. 541 (E.D.N.Y.1964) ........................................................................................ 9

*Litton Fin. Printing Div. v. NLRB*,
  501 U.S. 190 (1991) ................................................................................................ 12, 13, 14

*Maryland Casualty Co. v. Realty Advisory Bd.*,
  107 F.3d 979 (2d Cir. 1997) .............................................................................................. 10

14394359.2

*Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union*,
    975 F. Supp. 445 (E.D.N.Y. 1997) .................................................................................11, 13

*Pittsburgh Mailers Union Loc. 22 v. PG Publ'g Co. Inc.*,
    30 F.4th 184 (3d Cir. 2022) ....................................................................................................14

*Time Warner Cable v. Bloomberg*,
    118 F.3d 917 (2d Cir. 1997) .....................................................................................................9

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*
    *Workers Loc. 4-5025 v. E.I. DuPont de Nemours & Co.*,
    565 F.3d 99 (2d Cir. 2009) .......................................................................................................8

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) .............................................................10

*Woodlawn Cemetery v. Loc. 365, Cemetery Workers & Greens Attendants Union*,
    930 F.2d 154 (2d Cir. 1991) .............................................................................................11, 12

**Statutes**

National Labor Relations Act ...............................................................................................5, 6, 14

14394359.2

# PRELIMINARY STATEMENT

Petitioner, Trump Village Section 4, Inc. ("Trump Village"), respectfully submits this memorandum of law in support of its petition to stay the arbitration demanded by Respondent, Local 804 International Brotherhood of Teamsters ("Local 804 or the "Union") (collectively, the "Parties"). Trump Village and the Union were parties to a collective bargaining agreement ("CBA") that was effective November 1, 2016, and expired on October 31, 2021. The Union asserts that the CBA expired pursuant to its terms on October 31, 2021 and that Trump Village improperly refused to negotiate a successor agreement. Trump Village asserts that the CBA did not expire but continued for another year until October 31, 2022. On October 29, 2021, the Union filed an unfair labor practice charge ("October ULP") against Trump Village alleging a failure to bargain. The Union then filed two separate grievances regarding the discipline and termination of one of its members, which occurred after the Union claims the CBA expired. In May 2022, the first grievance went to arbitration, and a default judgment was entered in favor of the Union. On June 28, 2022, the assigned arbitrator notified the Parties that arbitration had been scheduled for the second grievance on July 5, 2022. Trump Village requests that the Court stay this arbitration pending the resolution of the October ULP, as failure to do so will cause irreparable harm to Trump Village.

# STATEMENT OF FACTS

Trump Village and Local 804 are signatories to the CBA, which was effective November 1, 2016 through October 31, 2021. On October 29, 2021, Local 804 filed the October ULP, No. 29-CA-285394, with the National Labor Relations Board ("NLRB"), alleging that Trump Village violated Section (8)(a)(5) of the National Labor Relations Act ("NLRA") by

1

failing to bargain in good faith with the Union upon the expiration of the CBA. Trump Village responded, and on April 22, 2022, the Board issued a complaint regarding the October ULP. The matter is currently scheduled for a hearing before the NLRB on August 2, 2022.

On or about January 3, 2022, Wayne Walker ("Grievant"), a Handyman employed by Trump Village, was given a one (1) day unpaid suspension for failure to follow Trump Village's timekeeping procedures. As a Handyman, Grievant was a member of the Union and the terms and conditions of his employment were governed by the CBA. On or about March 28, 2022, the Union grieved Grievant's suspension (the "Suspension Grievance"). On February 14, 2022, the Union also filed a second unfair labor practice charge, No. 29-CA-290599, ("February ULP") alleging that Trump Village violated NLRA Section 8(a)(5) by failing to bargain in good faith and inappropriately disciplined employees over the "new punch in procedure." Grievant was not specifically mentioned in the February ULP, but the policy in question is the one under which he was disciplined. On February 4, 2022, the Union requested arbitration regarding Grievant's suspension.

On March 7, 2022, Grievant again failed to follow the Company's timekeeping procedures and his employment was terminated. The Union grieved the termination of Grievant's employment (the "Termination Grievance"). On March 28, 2022, the Union filed another unfair labor practice charge, No. 29-CA-293803, with the NLRB, alleging violations of NLRA Section 8(a)(5) regarding Trump Village's failure to bargain, as well as the termination of Mr. Walker's employment. The Union also filed a different unfair labor practice charge, No. 29-CA-296138, with the NLRB on May 20, 2022, ("May ULP"), alleging violations of NLRA Section 8(a)(5) over Trump Village's failure to bargain in good faith and participate in the grievance procedure set forth by the CBA. The Union amended the March ULP on May 31,

2022 by specifically adding that Trump Village refused to participate in the grievance process relating to the termination of Grievant's employment.

The Union requested arbitration of the Suspension Grievance before Arbitrator Robert Hertzog. Arbitrator Herzog scheduled the hearing of the Suspension Grievance for May 23, 2022. Trump Village objected to the arbitration of the Suspension Grievance before Arbitrator Hertzog on the grounds that the Union had filed a ULP with the NLRB asserting that the CBA had expired. Accordingly, Trump Village requested that the Grievance be stayed pending a decision by the NLRB on the October ULP. On May 4, 2022, Arbitrator Hertzog issued a Pre-Hearing decision finding that the Suspension Grievance could proceed to arbitration regardless of whether the CBA had expired or not. Due to the ULPs pending before the NLRB and the Union's position that the CBA had expired, Trump Village did not participate in the arbitration. On May 26, 2022, Arbitrator Herzog issued a default award in favor of Local 804 finding that Mr. Walker was suspended in violation of the Agreement.

On May 13, 2022, the NLRB issued a Request for Information to Trump Village, including a request to take affidavits of Trump Village personnel, regarding the February ULP and March ULP. In late June 2022, the Union unilaterally contacted Arbitrator Hertzog and notified him that it was ready to schedule arbitration for the Termination Grievance. On June 28, 2022, Arbitrator Hertzog scheduled arbitration of the Termination Grievance for July 5, 2022, and the instant action followed.

## ARGUMENT

Embedded within the Termination Grievance is the question of whether Trump Village and Local 804 are parties to a valid agreement to arbitrate the termination of Grievant's employment. The Union asserts that the CBA, by its terms, expired on October 31, 2021. The

NLRB has scheduled a hearing for August 2, 2022, to adjudicate the issue of the CBA's expiration. If the Board finds that the CBA expired on October 31, 2021, then the agreement to arbitrate, along with the appointment of arbitrators selected to hear grievances between the parties, expired with it. If Arbitrator Hertzog hears the Termination Grievance before the Board's adjudication, he necessarily decides by default that the CBA has been extended and that he has the authority to hear grievances. The parties have not given the arbitrators appointed under the CBA the authority to hear the grievance of whether the CBA expired. If, in fact, the CBA has expired, then Arbitrator Hertzog retains no authority to hear or determine grievances. Should Trump Village be forced to arbitrate the Termination Grievance ahead of the NRLB proceedings, it will suffer irreparable harm.

    A. **The Arbitration Should Be Stayed in Favor of the NLRB Proceedings**

    It is within the jurisdiction of the Court, not an arbitrator, to determine the existence of a binding arbitration agreement. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Loc. 4-5025 v. E.I. DuPont de Nemours & Co.,* 565 F.3d 99, 102 (2d Cir. 2009) ("whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination") (internal citations omitted). However, courts will defer jurisdiction of arbitrability disputes to the NLRB when there are proceedings already ongoing in that forum. *See Colonie Hill, Ltd. v. Loc. 164, Bartenders, Hotel & Rest. Emp. Union*, 343 F. Supp. 986, 988 (E.D.N.Y. 1972) (court staying arbitration in favor of the NLRB where "the main issue to be determined is whether or not a valid contract exists between the parties to compel arbitration"); *Carey v. General Electric Co.*, 315 F.2d 499, 511 n. 12 (2d Cir.1963) ("[I]t is not at all inconsistent for a court to defer its

4

judgment should the Board already be seised of jurisdiction over a complaint by one of the parties to the contract."), cert. denied, 377 U.S. 908, 84 S.Ct. 1162, 12 L.Ed.2d 179 (1964).

Local 804 has filed four unfair labor practice charges against Trump Village with the NLRB. The first of these charges, the October ULP, directly addresses the question of whether the CBA expired. The Board has issued a complaint in this matter, and the charge is scheduled to be adjudicated before the Board on August 2, 2022. The Court should defer its jurisdiction on the arbitrability of the Termination Grievance at issue until the Board issues its decision on the October ULP. *See Int'l Brhd. of Boilermakers v. Combustion Engineering*, 337 F. Supp. 1349 (E.D.N.Y. 1971) (stay of arbitration award appropriate where Board had issued complaint and scheduled hearings); *see also American Bridge v. Local 40, Int'l Assoc. of Bridge Workers*, 130 L.R.R.M. 3202, 3203–04 (S.D.N.Y.1988) (finding that the "The law is clear that an NLRB decision takes priority over a contradictory arbitration decision," and as such, staying arbitration in favor of NLRB proceedings); *Allied Maintenance Corp. v. Local No. 32B–32J, Serv. Employees Int'l Union, 88 Lab. Cas*. (CCH) ¶ 11,859 (S.D.N.Y.1980) (finding that arbitration should be stayed in favor of a Board ruling when the Board determination could render the arbitration decision futile); *Kentile, Inc. v. Local 457, United Rubber, Cork, Linoleum & Plastic Workers of America,* 228 F.Supp. 541, 544–45 (E.D.N.Y.1964) (staying arbitration proceeding pending the conclusion of the proceedings before the NLRB).

B. **Trump Village is Entitled to a Stay of Arbitration Until the Issue of Arbitrability Can be Decided**

Moreover, to require arbitration of the Termination Grievance prior to the NLRB's ruling would cause irreparable harm to Trump Village thereby necessitating a preliminary injunction. Under well-established Second Circuit precedent, a preliminary injunction may be granted if the movant demonstrates irreparable harm and either (1) likelihood of success on the merits; or

(2) serious questions going to the merits so as to make them fair grounds for litigation, and a balance of hardships tipping decidedly in favor of the movant. *See Time Warner Cable v. Bloomberg,* 118 F.3d 917, 923 (2d Cir. 1997). Trump Village meets this standard regarding the Termination Grievance.

      **i.**     **Trump Village Would Suffer Irreparable Harm if Forced to Arbitrate This Dispute**

Trump Village would suffer irreparable harm if forced to arbitration the Termination Grievance, as the mere act of doing so would be a *de facto* decision that (1) the CBA did not expire, and (2) that Arbitrator Hertzog has authority to hear the grievance. If the arbitration were to proceed and the Board determines that the CBA expired, then Trump Village has been forced to arbitrate an issue which is not arbitrable before an arbitrator that lacks authority to decide the issue. Therefore, the question at the heart of Grievant's Termination Grievance is not whether his termination violated the CBA, but rather whether the Parties have a valid agreement to arbitrate that dispute in the first place?

The Supreme Court has made it abundantly clear that a party cannot be forced to arbitrate issues that it did not agree to arbitrate. *AT&T Technologies v. Communications Workers of America,* 475 U.S. 643, 582, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). "Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). In recognition of the foregoing principle, courts have uniformly held that forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes *per se* irreparable harm, even if the threatened irreparable harm to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award. *See, e.g., Maryland Casualty Co. v. Realty Advisory Bd.,* 107 F.3d 979 (2d Cir. 1997) (holding

that where there is no agreement to arbitrate, plaintiff would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable); *Fedway Assocs., Inc. v. Wine, Liquor & Distillery Workers Union Loc. 1-D, UFCW,* No. 21-CV-8536 (VEC), 2021 WL 7710199, at *2 (S.D.N.Y. Nov. 3, 2021) (finding that "being compelled to arbitrate a despite that is not arbitrable is irreparable harm"). Moreover, the fact that a court has not yet decided the arbitrability issue does not alter the result. *See Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union*, 975 F. Supp. 445 (E.D.N.Y. 1997).

Trump Village would suffer irreparable harm if forced to arbitrate the Termination Grievance while the question of arbitrability is undecided. The CBA under which this grievance allegedly rose expired, by its terms, on October 31, 2021. As noted above, the Parties are engaged in a dispute as to whether the CBA expired, or was renewed, and the matter will be heard by the Board on August 2, 2022. There is no language in the CBA which provides that the arbitration clause or the arbitrators appointed survives the expiration of the CBA. To require Trump Village to arbitrate the Termination Grievance pending the NLRB's decision would force it to arbitrate a dispute that may not be arbitrable before an unauthorized arbitrator. Trump Village would then be compelled to again raise its objections to the arbitration, as it did with the Suspension Grievance, as well as risk its own participation in the arbitration process. *See Gvozdenovic v. United Air Lines, Inc.,* 933 F.2d 1100, 1105 (2d Cir. 1991) (finding that appellants were bound by arbitrator's ruling because they voluntarily and without objection participated in arbitration). Additionally, Trump Village would then be forced to adjudicate the exact same issue before the NLRB on August 2, 2022, constituting a further unnecessary waste of resources. *See Woodlawn Cemetery v. Loc. 365, Cemetery Workers & Greens Attendants*

7

*Union,* 930 F.2d 154, 157 (2d Cir. 1991) (finding that the expense and time involved in relitigating the same issues before the NLRB and in arbitration was cause for a stay of arbitration). Two of the charges before the NLRB, the February and March ULPs, involve Mr. Walker directly and provide additional grounds for staying the arbitration relating to the Termination Grievance. In addition to duplicating efforts on the question of arbitrability, to allow the arbitration to go forward would duplicate litigation on the question of Mr. Walker's discharge. The NLRB is actively pursuing these matters, as evidenced by its extensive request for information (including a request for several affidavits from Trump Village personnel), on May 13, 2022. To require Trump Village to adjudicate this matter both at arbitration and the NLRB is illogical and a waste of resources. *See, e.g., Woodlawn*, 930 F.2d 154.

  Trump Village would also be subjected to irreparable harm if forced to arbitrate Grievant's termination of employment without the ability to introduce evidence relating to his suspension. Trump Village has the inherent right to present evidence demonstrating that the termination of Grievant's employment was for just cause. Part of the evidence relevant to that standard arises out of the progressive discipline process and the fact that Grievant had been disciplined in the past for the same conduct that resulted in the termination of his employment. Since Arbitrator Hertzog improperly proceeded with the Suspension Grievance prior to a ruling from the NLRB as to whether he had authority to do so, and issued an adverse default decision against Trump Village, Trump Village could be precluded from introducing information relevant to the termination of Grievant's employment.

### ii. There is a Strong Likelihood that Trump Village Will Succeed on the Merits

The basic principles regarding whether a grievance can be arbitrated pursuant to a collective bargaining agreement's arbitration provision *after* the agreement has expired were outlined by the Supreme Court in *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991). There, the Court reiterated the general rule that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." *Id.* at 207. The Supreme Court also explained that an agreement's arbitration provision survives expiration only if the dispute in question "arises under the contract" – in other words, (1) it involves a matter that occurred prior to expiration; (2) the action infringes upon a vested right under the agreement; or (3) the disputed contractual right survives under "normal principles of contract interpretation" – and if nothing in the agreement either explicitly or implicitly provides that the arbitration provisions will not continue after the agreement's expiration. *Id.* at 205, 207

#### a. Conduct Arose After the Expiration of the CBA

The first prong of the *Litton* test requires little analysis and discussion. Where the conduct that triggers the grievance occurs after the contract expires, it simply cannot be said that the grievance "involves facts and occurrences that arose before expiration." *See Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union*, 975 F. Supp. 445, 447 (E.D.N.Y. 1997). The Union asserts that the CBA expired on October 31, 2021. Grievant's employment was not terminated until March 7, 2022. Without question, the facts and circumstances arose after expiration of the CBA.

#### b. The Right at Issue is Not Vested

Regarding the second prong of the *Litton* test, it has been held that there are two ways to show that the right in issue is vested, and thus survives the expiration of the applicable

9

agreement. First, "a court may use standard principles of contract interpretation to determine whether a right is vested, and thus might conclude the parties intended a right to vest if it is shown contract language or extrinsic evidence to support that conclusion." *New York Dialysis Servs., Inc. v. New York State Nurses Ass'n*, 262 F. Supp. 3d 96, 103 (S.D.N.Y. 2017) (internal quotations and citations omitted). Second, "rights that can be worked toward or accumulated over time, such as severance or vacation pay, are generally presumed to be vested without any other evidence in the contract." *See id*. (internal quotations and citations omitted). The Termination Grievance does not contain a vested right under the CBA. Specifically, there is no contractual language or extrinsic evidence to support the contention that the Parties intended matters involving employee termination to be arbitrable beyond the expiration of the CBA. Moreover, employee termination is not a right that can be "accumulated over time," in the same way as severance or vacation pay. The termination of employment is instead a discrete act. As such, it cannot be said to have vested under the CBA and is not subject to arbitration.

### c. The Right to Arbitration Does Not Survive Under Normal Principles of Contract Interpretation

The Court in *Litton* also explained that "if a collective bargaining agreement provides *in explicit terms* that certain benefits continue after the agreement's expiration, disputes as to such continuing benefits may be found to arise under the agreement, and so become subject to the contract's arbitration provisions." *Litton*, 501 U.S. at 207-08; 111 S. Ct. at 2226 (emphasis added). Applying the foregoing principle, courts have generally held that where there is no express language in the provision of the agreement relating to the contested issue (in this case, the termination of Grievant) or in the arbitration clause itself, indicating that either the benefit or the agreement to arbitrate survives expiration, the third *Litton* exception is not available. This was explicitly affirmed in a recent decision by the Third Circuit, in *Pittsburgh Mailers Union*

10

*Loc. 22 v. PG Publ'g Co. Inc.,* 30 F.4th 184, 187 (3d Cir. 2022). There, the Court held that the arbitration provisions of the collective bargaining agreements had no durational limit of their own and thus did not survive expiration of the bargaining agreements or remain in effect for the extended period during which the parties were attempting to negotiate new agreements. The Third Circuit explained that arbitration provisions are matters of consent, and as such, they are not required by the NLRA to continue in effect during the negotiation of a new collective bargaining agreement.

In the case at issue, the CBA does not contain any language expressly, or even implicitly, extending the arbitration provision or the appointment of arbitrators beyond the expiration of the contract. Therefore, the NLRB may determine that arbitration provision in the CBA expired, and, with it, Arbitrator Hertzog's ability to arbitrate the termination of Grievant's employment. It is the Union which is asserting that the CBA has expired, yet, it is the Union pursuing grievances under an expired CBA, as well as randomly assigning such grievances to arbitrators that have no authority to hear those grievances under the CBA. To require arbitration prior to the NLRB's adjudication of the expiration of the CBA would result in irreparable harm to Trump Village. Therefore, the arbitration should be stayed until the conclusion of the NLRB proceedings.

      **iii.**    **Alternatively, There are Serious Questions Going to the Merits and the Balance of the Hardships Tips in Favor of Trump Village**

Alternatively, the forgoing discussion demonstrates that there are serious questions going to the merits of the arbitrability of the grievance sufficient to warrant a stay of the arbitration. These questions include whether the CBA expired, and whether the arbitrator has the authority to hear the grievance. The first of these will be adjudicated by the NLRB on August 2, 2022, and

11

the second will follow from whatever decision is issued by the NLRB. These questions are fundamental to the merits of the Termination Grievance, and favor a stay of arbitration.

Moreover, the balance of the hardships tips in favor of Trump Village. "[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013), aff'd, 764 F.3d 210 (2d Cir. 2014) (internal quotations and citations omitted). For the reasons outlined above, Trump Village would suffer irreparable harm if the arbitration were to proceed ahead of the NLRB's adjudication of the October ULP. As such, the balance of the hardships tips in favor of Trump Village and the arbitration should be stayed.

## CONCLUSION

For the reasons set forth above, Petitioner's application to temporarily stay the arbitration should be granted.

Dated:  July 5, 2022

                    Respectfully submitted,

                    BOND, SCHOENECK & KING, PLLC

                    By:     /s/ Theresa Rusnak
                          Daniel Murphy, Esq.
                          Theresa Rusnak, Esq.
                    600 Third Avenue, 22nd Floor
                    New York, New York  10016
                    Telephone:  646.253.2300
                    E-mail:  dmurphy@bsk.com
                    E-mail:  trusnak@bsk.com