UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TRUMP VILLAGE SECTION 4, INC.,

Petitioner,

- against -

LOCAL 804 INTERNATIONAL BROTHERHOOD OF TEAMSTERS,

Respondent.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-3925 (PKC) (PK)

PAMELA K. CHEN, United States District Judge:

Before the Court is Petitioner Trump Village Section 4, Inc.'s request for a preliminary injunction to stay arbitration regarding the termination of one of its former employees, Wayne Walker, whose interests in the arbitration are represented by Respondent Local 804 International Brotherhood of Teamsters, until such time that the National Labor Relations Board can adjudicate the issue of whether Petitioner improperly refused to negotiate a successor collective bargaining agreement with Respondent. For the reasons discussed below, Petitioner's request for a preliminary injunction is denied.

## BACKGROUND[1]

### I. The Collective Bargaining Agreement

Petitioner, "a co-operative apartment complex located in Brooklyn, New York," commenced this action on July 6, 2022. (*See* Petition ("Pet."), Dkt. 1, ¶ 1.) Petitioner and Respondent are parties to a collective bargaining agreement ("CBA") entered into in November 2016. (*See* CBA, Dkt. 5-3, Exhibit A.) Respondent "represents certain building service employees

[1] The Court assumes the truth of the Petition's non-conclusory factual allegations. *See Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (*en banc*).

employed" by Petitioner at the apartment complex. (*Id.* at ECF[2] 5.) The CBA provides that it remains in full force and effect between November 1, 2016 and October 31, 2021, and "continue[s] in full force and effect from year to year thereafter" unless either party serves upon the other a "written notice of desire to cancel, amend, or terminate" it. (*Id.* at ECF 16–17.)

In October 2021, Respondent filed an unfair labor practice charge ("October ULP") with the National Labor Relations Board ("NLRB") alleging that Petitioner had "failed and refused to bargain in good faith with [Respondent] upon the expiration of the" CBA. (Pet., Dkt. 1, ¶ 9.) A hearing to adjudicate this charge before the NLRB is scheduled for August 2, 2022. (*Id.* ¶ 11.)

## II. Suspension of Wayne Walker

On or about January 3, 2022, Petitioner gave one of its employees, Wayne Walker, "a one (1) day unpaid suspension" stating "failure to 'clock in' for his shift on that day." (*Id.* ¶ 12.) In response, Respondent filed a second unfair labor practice charge with the NLRB alleging that Petitioner had violated the National Labor Relations Act ("NLRA") by "failing to bargain in good faith" and "discipling [sic] employees under a 'new punch in procedure.'" (*Id.* ¶ 15). Walker was not named in this charge, "but the policy in question is the one under which he was disciplined." (*Id.*) Respondent also "grieved Mr. Walker's suspension" with Petitioner (*id.* ¶ 14) and requested arbitration (*id.* ¶ 16).

On May 3, 2022, an assigned arbitrator held a pre-hearing conference in connection with Walker's suspension grievance to determine whether arbitration should proceed. Petitioner took the position "that it would not participate in the arbitration due to [the] pending nature of the October ULP before the NRLB [sic]." (*Id.* ¶ 19). Respondent argued that the arbitration should

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

proceed and "be heard as soon as possible" because "[t]he longer th[e] suspension case is delayed, the longer Mr. Walker is without income and benefits due to a subsequent discharge that may rely on the validity of the one-day suspension." (Arbitrator's Pre-Hearing Interim Decision, Dkt. 5-3, at ECF 51.)

In his May 4, 2022 decision, the arbitrator considered Petitioner's argument before the NLRB, also advanced before the arbitrator himself, that the CBA "did not expire, but rather renewed itself for another year by operation of the automatic renewal clause in the CBA." (*Id.*) The arbitrator also considered Respondent's argument before the NLRB and the arbitrator that it gave timely notice to Petitioner "to commence collective bargaining negotiation for a new" CBA and that, "[d]uring such collective bargaining negotiations, the status quo must be maintained, including the sanctity of the arbitration provision." (*Id.*) The arbitrator concluded that he "need not make nor [did] he make any finding as to whether the CBA automatically renewed for one year or was subject to collective bargaining negotiations" because the arbitration should proceed "[u]nder either Party's CBA position." (*Id.* at ECF 52–53.) Accordingly, "[t]he arbitration was held on May 23, 2022" and, because Petitioner did not participate in it, "the arbitrator issued a Default Award" in Respondent's favor. (Pet., Dkt. 1, ¶ 21.)

**III. Termination of Wayne Walker's Employment**

On March 7, 2022, Petitioner terminated Walker's employment for "again fail[ing] to follow [Petitioner's] timekeeping procedures." (*Id.* ¶ 17). In response, Respondent filed a third unfair labor practice charge with the NLRB alleging that Petitioner had violated the NLRA "by failing to bargain in good faith, as well as by terminating Mr. Walker's employment." (*Id.* ¶ 18). Respondent also grieved Walker's termination ("Termination Grievance"), which was scheduled for arbitration on July 5, 2022. (*Id.* ¶ 26). The record is unclear on whether the arbitration

proceeded as scheduled. In any event, Petitioner "has not participated in the arbitration process relating to the Termination Grievance." (*Id.* ¶ 27).

## LEGAL STANDARD

"[A] preliminary injunction is an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (*per curiam*) (citation and quotations omitted). A petitioner seeking a preliminary injunction is required to show "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Cnty. of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008). "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks omitted); *see also Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) ("To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." (internal quotation marks omitted)). The "court must [also] consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor" and "must ensure that the public interest would not be disserved by the issuance of a preliminary injunction." *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010) (internal citations and quotations omitted).

## DISCUSSION

The CBA to which Petitioner and Respondent are parties provides that it "continue[s] in full force and effect from year to year" unless either party serves upon the other a "written notice

of desire to cancel, amend, or terminate" it. (*See* CBA, Dkt. 5-3, Exhibit A.) In its appearances before the NLRB and the arbitrator, Petitioner has consistently argued that the CBA did not expire in October 2021 because it was automatically renewed pursuant to the CBA's renewal clause. Despite this, in the present action, Petitioner argues a likelihood of success on the merits and irreparable harm—two key factors for the Court to consider in deciding whether to issue a preliminary injunction—on the ground that the CBA has expired. (*See generally* Petitioner's Memorandum of Law, Dkt. 5-4.) Petitioner asks the Court to "defer its jurisdiction on the arbitrability of the Termination Grievance at issue until the [NLRB] issues its decision" and argues that it will suffer *per se* irreparable harm if it is required to arbitrate because "the mere act" of proceeding with arbitration would be a "*de facto* decision that" the CBA did not expire and the arbitrator has authority to hear the grievance. (*Id.* at 6.)

First, the Court notes, as discussed above, that the arbitrator did not "make any finding as to whether the CBA automatically renewed for one year or was subject to collective bargaining negotiations" in his May 2022 decision, instead finding that arbitration must proceed *regardless* of the parties' arguments on arbitrability. (*See, e.g.*, Default Award, Dkt. 1-3, Exhibit I at ECF 61.) Thus, Petitioner's argument that proceeding with arbitration is a "*de facto* decision" that the CBA has not expired is without merit.

Second, Petitioner's request that the Court "defer its jurisdiction on [] arbitrability" is puzzling given that it is *Petitioner* that filed the present suit and put the issue of arbitrability at the center of its arguments. The Court cannot entirely ignore arbitrability where, as here, irreparable harm turns on "the merits of the petitioner's claim—the arbitrability of the dispute." *Int'l Bhd. of Elec. Workers, AFL-CIO, Loc. Union No. 3 v. Charter Commc'n*, 277 F. Supp. 3d 356, 365 (E.D.N.Y. 2017). That is because "irreparable harm exists when a party is forced to arbitrate a

dispute that is not subject to arbitration, but no irreparable harm arises from arbitrating disputes that are subject to arbitration." *Pike Co. v. Tri-Krete Ltd.*, 349 F. Supp. 3d 265, 275 (W.D.N.Y. 2018); *see also Medicine Shoppe Int'l, Inc. v. Mitsopoulos*, No. 4-CV-5207 (ERK) (MDG), 2006 WL 8438209, at *3 (E.D.N.Y. May 5, 2006), *report and recommendation adopted*, 2006 WL 8438198 (E.D.N.Y. May 12, 2006) ("[W]here there is a valid agreement to arbitrate, no irreparable harm results from compelling the resisting party to arbitrate."); *Stop & Shop Supermarket Co. v. United Food & Com. Workers' Union Local 342*, 407 F. Supp. 2d 515, 518 (S.D.N.Y. 2005) ("Whether Plaintiff faces irreparable harm, has a likelihood of success on the merits, and whether the claim is a fair ground for litigation all depend on whether the terms of the arbitration agreement cover the [underlying dispute].").

Third, there is no *per se* irreparable harm under recent Supreme Court and Second Circuit precedent. "[R]ather, plaintiffs must demonstrate that, on the facts of the case, the failure to issue an injunction would actually cause irreparable harm." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012); *see also eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006).

Having reviewed the CBA, the Court has no reason to believe, at this stage of the proceedings, that Petitioner is not under a contractual obligation to arbitrate Walker's grievance over his termination, as the CBA requires. Petitioner has not submitted any "written notice of desire to cancel, amend, or terminate" the CBA by it or Respondent (CBA, Dkt. 5-3, Exhibit A, at ECF 16–17) in support of its argument that the CBA did not automatically renew. In other words, Petitioner's argument that it is likely to succeed on the merits of its claim (or that there are serious questions going to the merits) regarding arbitrability of the dispute is wholly unpersuasive on the record before the Court. *See Bhd. of Trs. of Pointers, Cleaners & Caulkers Annuity Fund, Pension Fund and Welfare Fund v. Harbor Island Contracting, Inc.*, No. 13-CV-6075 (MKB), 2015 WL

1245963, at *3 (E.D.N.Y. Mar. 16. 2015) ("The CBA was effective from July 1, 2008 through July 30, 2012, but it includes a renewal clause that provides for automatic extensions from year to year absent timely written notice by one of the parties of its desire to terminate or amend the agreement."). "A party suffers no legally cognizable injury at all, let alone irreparable injury, by being compelled to engage in arbitration to which he has contractually agreed." *Lawrence v. Wilder Richman Secs. Corp.*, 417 F. App'x 11, 14 (2d Cir. 2010) (summary order).

Moreover, Petitioner "has decided not to participate in the arbitration, so it will not expend time or resources arbitrating the dispute in the absence of a preliminary injunction." *Int'l Bhd. of Elec. Workers*, 277 F. Supp. at 364. "Even if it chose to participate, the cost of adjudicating a dispute on its own does not constitute irreparable injury." *Id.* (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). "If a dispute is nonarbitrable, then an arbitrator necessarily exceeds his powers in adjudicating it." *Id.* Petitioner has already objected to the arbitrator's authority to proceed with the arbitration and thereby "reserved its right to argue in court against enforcement of any arbitration award" should the NLRB find that there was no CBA and "therefore no agreement to arbitrate in effect during the relevant time period." *Id.* Thus, Petitioner will suffer no harm, "irreparable or otherwise[,] if the arbitration proceeds." *Id.*; *see also Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 100 (2d Cir. 1986) ("[A]s the preferred method for resolving labor disputes, arbitration by itself imposes no [irreparable] injury to the resisting party, except perhaps in extraordinarily rare circumstances, which we need not try here to imagine." (internal quotation marks omitted)).

**CONCLUSION**

For the reasons stated in this Memorandum and Order, Petitioner's request for preliminary relief is denied.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 11, 2022
      Brooklyn, New York